**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Ashley A. Marton, OSB No. 171584
ashley@workplacelawpdx.com
CAMBRELENG & MARTON LLC
3518 S. Corbett Ave
Portland, Oregon 97239
Telephone: (503) 477-4899

FILED21 NOV '24 12:09USDC-ORP

R. Scott Oswald, Esq. (*to be admitted pro hac vice*)
soswald@employmentlawgroup.com
Janel E. Quinn, Esq. (*to be admitted pro hac vice*)
jquinn@employmentlawgroup.com
THE EMPLOYMENT LAW GROUP, P.C.
1717 K St. N.W., Suite 1110
Washington, D.C. 20006
Telephone: (202) 261-2813

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. DAVID REED<br><br>    *Plaintiffs,*<br><br>v.<br><br>SWICKARD MANAGEMENT COMPANY,<br><br>    Address:<br>    19400 S.E. McLoughlin Blvd.<br>    Gladstone, OR 97027<br><br>    Registered Agent:<br>    Corporation Service Company<br>    1127 Broadway Street NE, Ste. 310<br>    Salem, OR 97301<br><br>        *Defendant.* | Civil Action No. 3:24-W-1947-AR<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.***<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY DEMAND** |

Pg. 1 – **COMPLAINT**

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

#109569

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## INTRODUCTION

1.    *Qui tam* Relator David Reed ("Reed"), by and through undersigned counsel, individually and on behalf of the United States of America, files this Complaint against Swickard Management Company to recover damages, penalties, and attorneys' fees and costs for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA").

2.    Swickard Management Company is a management company that oversees Swickard Auto Group, which comprises at least 40 associated business entities and collectively employs over 839 employees.

3.    In 2020, eleven business entities associated with Swickard Auto Group, including Swickard Management Company, received loans under the Paycheck Protection Program (PPP). These loans totaled $10,939,505 and were forgiven for a total of $11,189,510.51.

4.    Relator believes that ten of Swickard Auto Group's associated entities have valid franchise agreements with franchisors listed on the Small Business Administration's (SBA's) franchise list. For purposes of the PPP loan, this means that only the employees of that individual franchisee are counted when determining the entity's eligibility for a PPP loan.

5.    However, for one of the entities, Swickard Management Company, Relator believes there is no valid franchise agreement in place, meaning all employees of all Swickard Auto Group affiliated entities must be aggregated for determining Swickard Management Company's PPP eligibility.

6.    Additionally, all revenue for all Swickard Auto Group affiliated entities must be aggregated for determining Swickard Management Company's PPP eligibility under SBA's alternative size standard.

Pg. 2 – **COMPLAINT**

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

7.     Defendant Swickard Management Company received a PPP loan for $699,700, claiming 48 employees. The loan was ultimately forgiven for $707,713.

8.     The U.S. government also paid a $20,991 processing fee to City National Bank of Florida for processing Swickard Management Company's PPP loan.

9.     Because Swickard Management Company was ineligible to receive PPP loans, yet falsely certified to the U.S. government that it was eligible to receive a PPP loan and falsely certified that it was eligible for loan forgiveness, these false statements led to the submission and payment of false claims for payment to the U.S. government.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this action arises under the False Claims Act as amended at 31 U.S.C. §§ 3729–3733.

11.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3729(a) because Defendant is domiciled within this judicial district.

12.     Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. §§ 1391 and 1395(a) because Defendant is domiciled within this judicial district.

13.     This action is not based on public disclosure.

14.     Pursuant to 31 U.S.C. § 3730(b)(2), Relator has provided the Government with a copy of this Complaint and a written disclosure of substantially all material, evidence, and information in his possession.

## THE PARTIES

### Relator David Reed

15.     Relator David Reed is a resident of Cary, North Carolina.

Pg. 3 – **COMPLAINT**

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

16. Reed worked in the field of information technology prior to his retirement in 2019.

*Defendant Swickard Management Company*

17. Swickard Management Company is a domestic Washington corporation that was formed in December 2016. The company has a foreign filing in Oregon.

18. Swickard Management Company is the management company that oversees Swickard Auto Group.

19. Swickard Auto Group is headquartered at 19400 S.E. McLoughlin Blvd., Gladstone, OR 97027.

20. Jeff Swickard owns and operates Swickard Auto Group and serves as its President and CEO.

21. Swickard Auto Group has approximately 47 business locations, including five auto dealerships in Oregon, eight dealerships in Alaska, sixteen dealerships in California, six dealerships in Hawaii, two dealerships in Texas, and nine dealerships and one service center in Washington. All Swickard Auto Group entities listed below are also owned and operated by Jeff Swickard.

  a. BMW of Eugene, 2100 Martin Luther King Jr. Blvd., Eugene, OR 97401;

  b. Swickard Honda, 19400 SE McLoughlin Blvd., Gladstone, OR 97027;

  c. Gresham Toyota, 950 NE Hogan Dr., Gresham, OR 97030;

  d. Mercedes-Benz of Wilsonville, 25035 SW Parkway Ave., Wilsonville, OR 97070;

  e. Mercedes-Benz of Wilsonville Vans, 25035 SW Parkway Ave., Wilsonville, OR 97070;

Pg. 4 – COMPLAINT

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

f.  Audi Anchorage, 6115 Old Seward Hwy., Anchorage, AK 99518;

g.  Mercedes-Benz of Anchorage, 1000 E. 6th Ave., Anchorage, AK 99501;

h.  Porsche Anchorage, 6115 Old Seward Hwy., Anchorage, AK 99518;

i.  Swickard Cadillac Anchorage, 1300 E. 5th Ave., Anchorage, AK 99501;

j.  Swickard Chevrolet Anchorage, 1300 E. 5th Ave., Anchorage, AK 99501;

k.  Swickard GMC/Buick Anchorage, 1300 E. 5th Ave., Anchorage, AK 99501;

l.  Swickard Volkswagen of Anchorage, 6115 Old Seward Hwy., Anchorage, AK 99518;

m.  Swickard GMC of Palmer, 6275 E. Blue Lupine Dr., Palmer, AK 99645;

n.  Lexus of Fremont, 5600 Cushing Parkway, Fremont, CA 94538;

o.  Audi Oakland, 7201 Oakport St., Oakland, CA 94621;

p.  Crown Toyota, 1201 Kettering Dr., Ontario, CA 91761;

q.  Audi Palo Alto, 1730 Embarcadero Rd., Palo Alto, CA 94303;

r.  Land Rover Redwood City, 440 Convention Way, Redwood City, CA 94063;

s.  Land Rover San Francisco, 901 Van Ness Ave., San Francisco, CA 94109;

t.  Jaguar San Francisco, 901 Van Ness Ave., San Francisco, CA 91409;

u.  Mercedes-Benz of Marin, 540 Francisco Blvd. W. San Rafael, CA 94901;

v.  Land Rover Thousand Oaks, 3595 Auto Mall Dr., Thousand Oaks, CA 91362;

w.  Lexus Thousand Oaks, 3755 Auto Mall Dr., Thousand Oaks, CA 91362;

x.  Mercedes-Benz Thousand Oaks, 3905 Auto Mall Dr., Thousand Oaks, CA 91362;

y.  Swickard Acura Thousand Oaks, 3945 Auto Mall Dr., Thousand Oaks, CA 91362;

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

z. Swickard Buick GMC of Thousand Oaks, 3601 Auto Mall Dr., Thousand Oaks, CA 91362;

aa. Swickard Cadillac of Thousand Oaks, 3601 Auto Mall Dr., Thousand Oaks, CA 91362;

bb. Swickard Chevrolet of Thousand Oaks, 3440 Thousand Oaks Blvd., Thousand Oaks, CA 91362;

cc. Swickard Honda Thousand Oaks, 3925 Auto Mall Dr., Thousand Oaks, CA 91362;

dd. Mercedes-Benz of Honolulu, 818 Kapiolani Blvd., Honolulu, HI 96813;

ee. Mercedes-Benz of Honolulu Vans, 818 Kapiolani Blvd., Honolulu, HI 96813;

ff. Mercedes-Benz of Maui, 69 Hobron Ave., Kahului, HI 96732;

gg. Mercedes-Benz of Maui Vans, 69 Hobron Ave., Kahului, HI 96732;

hh. Mercedes-Benz of Kona, 74-5536 Kaiwi St. Bldg. A, Kailua-Kona, HI 96740;

ii. Mercedes-Benz of Kona Vans, 74-5536 Kaiwi St. Bldg. A, Kailua-Kona, HI 96740;

jj. Mercedes-Benz of South Austin, 10900 S I-35 Frontage Rd., Austin, TX 78748;

kk. Volvo Cars Southwest Houston, 8305 W. Sam Houston Pkwy. S., Houston, TX 77036;

ll. Volvo Cars Bellevue, 420 116th Ave. NE, Bellevue, WA 98004;

mm.     Audi Bellingham, 2200 Iowa St., Bellingham, WA 98229;

nn. Porsche Service Center Bellingham, 2200 Iowa St., Bellingham, WA 98229;

oo. Volkswagen of Bellingham, 2200 Iowa St., Bellingham, WA 98229;

pp. BMW of Lynnwood, 21000 Pacific Hwy., Edmonds, WA 98036;

Pg. 6 – **COMPLAINT**

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

qq. Swickard Toyota, 21300 Hwy. 99, Edmonds, WA 98026;

rr. Mercedes-Benz of Seattle, 2025 Airport Way S, Seattle, WA 98134;

ss. Mercedes-Benz of Seattle Vans, 2025 Airport Way S, Seattle, WA 98134;

tt. Volvo Cars Seattle, 2700 NE 55th St., Seattle, WA 98105;

uu. Porsche Seattle North, 18600 Hwy. 99, Lynnwood, WA 98037;

22.     According to PPP loan application data, the eleven entities associated with Swickard Auto Group that applied for and received PPP loans in 2020 have a combined total of approximately 839 employees.

23.     Swickard Auto Group entities generated a total of approximately $994 million in revenue in 2020.[1]

## OVERVIEW OF APPLICABLE LAWS, RULES, AND REGULATIONS

### *The Paycheck Protection Program*

24.     The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a law intended to address the economic fallout of the COVID-19 pandemic in the United States.

25.     The CARES Act resulted in, *inter alia*, the Paycheck Protection Program. Coronavirus Aid, Relief, and Economic Security Act, No. 116-136 (March 27, 2020).

26.     The PPP is a loan program designed to provide eligible businesses with low-interest rate loans guaranteed by the Small Business Administration (SBA) with support from the Department of the Treasury.

---

[1]"Top 150 dealership groups based in the U.S.," https://s3-prod.autonews.com/2021-12/2020-Top-150-Dealership-Groups.pdf.

Pg. 7 – **COMPLAINT**

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

27.    Businesses seeking a PPP loan can apply through any existing SBA 7(a) lender, through a federally insured depository institution or credit union, or through a participating Farm Credit System institution.

28.    The foregoing private institutions approve and authorize PPP loans and are subsequently reimbursed by the federal government.

29.    For its work to process the application and fund the loan, the SBA pays the lender a processing fee based on the size of the loan funded by the lender. SBA will pay lenders fees for processing PPP loans in the following amounts:

   a.    Five (5) percent for loans of not more than $350,000;

   b.    Three (3) percent for loans of more than $350,000 and less than $2,000,000; and

   c.    One (1) percent for loans of at least $2,000,000.

*SBA Procedural Notice*, SMALL BUS. ADMIN., https://www.sba.gov/sites/sbagov/files/2021-03/5000-20036-508.pdf.

30.    The PPP program provides small businesses with funds to pay up to 24 weeks of payroll costs including benefits.

31.    The PPP is similar to existing SBA Loan Programs. However, the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere, as defined in the Small Business Act. 15 U.S.C. § 632(h).

32.    The PPP section of the CARES Act expanded eligibility for SBA loans beyond the limitations of the Small Business Act. 15 U.S.C. §§ 632, 636.

33.    The following entities affected by Coronavirus (COVID-19) may be eligible:

   a.    Any small business concern that meets SBA's size standards (either the industry-based size standard or the alternative size standard);

Pg. 8 – **COMPLAINT**

      b.     Any business, 501(c)(3) non-profit organization, 501(c)(19) veterans' organization, or Tribal business concern (sec. 31(b)(2)(C) of the Small Business Act) with the greater of:

          i.    500 employees, or

          ii.   That meets the SBA industry size standard if more than 500, or

          iii.  Any business with a [North American Industry Classification System ("NAICS")] Code that begins with 72 (Accommodations and Food Services) that has more than one physical location and employs less than 500 per location;

      c.     Sole proprietors, independent contractors, and self-employed persons.

34.     The size of a business concern is determined under the SBA's size standards as they apply to the "concern whose size is at issue and **all of its domestic and foreign affiliates**." 13 C.F.R. § 121.301(f)(6) (emphasis added).

35.     Entities that apply for a PPP loan submit their Borrower Application Form to a federally insured depository institution, federally insured credit union, or a Farm Credit System ("Lender") which processes the loan application and funds the loan.

36.     The SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

37.     For its work to process the application and fund the loan, the SBA pays the Lender a processing fee based on the size of the loan funded by the Lender. SBA will pay lender fees for processing First Draw PPP loans in the following amounts: Five (5) percent for loans of not more than $350,000; Three (3) percent for loans of more than $350,000 and less than $2,000,000; and One (1) percent for loans of at least $2,000,000. 15 U.S.C. § 636(a)(36)(P).

38.     To be eligible for loan forgiveness, borrowers must complete SBA Form 3508 or SBA Form 3508EZ to calculate eligible payroll and nonpayroll costs.

39.     Borrowers must certify that the dollar amount for which forgiveness is requested:

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

a.  Was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

b.  Includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

c.  Includes payroll costs equal to at least 60% of the forgiveness amount; and

d.  Does not exceed eight weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual or, if a 24-week covered period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual.

*SBA Form 3508 "Paycheck Protection Program Loan Forgiveness Application"* (June 2020).

40.  Additionally, borrowers must certify that:

a.  They have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments; and

b.  The information provided in the application and the information provided in all supporting documents and forms is true and correct in all material respects.

*Id.*

41.  An entity can also be eligible for a PPP loan as a small business concern if it meets both tests of SBA's "alternative size standard" as of March 27, 2020:

a.  The maximum tangible net worth of the business is not more than $15 million; and

b.  The average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

SMALL BUS. ADMIN, *"Paycheck Protection Program Loans Frequently Asked Questions (FAQs)"*

(June 25, 2020).

Pg. 10 – **COMPLAINT**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

*SBA Exceptions and Limitations on Affiliation and Loan Eligibility*

42.     SBA Form 2483, which all applicants must submit to be considered for a PPP loan, requires an indication of Yes or No to the question: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A." SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020).

43.     Agency guidance specified that "applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 CFR § 121.301." SBA Interim Final Rule "Business Loan Program Temporary Changes; Paycheck Protection Program." 85 Fed. Reg. 20,819 (April 15, 2020).

44.     Entities that have the power to control one another are affiliates of one another. Entities that are controlled by the same third party are also affiliates of each other as well as of the third party. 13 C.F.R. § 121.301(f).

45.     Entities are also considered affiliates of one another if a principal of an entity controls the management of another. Affiliation between entities also arises if a single individual controls the management or Board of Directors of those entities. 13 C.F.R. § 121.301(f)(3).

46.     The CARES Act waived the § 121.103 affiliation provisions for a limited category of business concerns: businesses in the Accommodation and Food Services sector as determined by their North American Industry Classification System (NAICS) code; businesses operating as a franchise that are listed in the SBA's Franchise Directory; and businesses receiving financial assistance from a licensed Small Business Investment Company (SBIC). 15 U.S.C. §636(a)(36)(D)(iv).

Pg. 11 – **COMPLAINT**

47.    On the First Draw PPP Loan Borrower Application Form, the Applicant must indicate yes or no if it is a franchise that is listed in the SBA's Franchise Directory. The Applicant is not required to list the Franchise Identified Code issued by the SBA on this form. SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020).

48.    If a business knowingly makes false certifications on the PPP loan application and receives a PPP loan, then the business is in violation of the False Claims Act.

49.    If a business that receives a PPP loan, subsequently submits a loan forgiveness application, and knowingly makes false certifications on the loan forgiveness application, then the business is in violation of the False Claims Act.

50.    At all times herein mentioned, Defendant had knowledge of the public policies expressed in the guidelines herein mentioned, and of the fact that it must comply with all applicable SBA guidelines in order to receive a PPP loan and to apply for full forgiveness of a PPP loan.

### The Federal False Claims Act

51.    The FCA, 31 U.S.C. § 3729(a)(1)(A), makes knowingly presenting or causing to be presented to the United States any false or fraudulent claim for payment a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and the appropriate civil monetary penalty.

52.    The FCA, 31 U.S.C. § 3729(a)(1)(B), makes knowingly making, using, or causing to be used or made, a false record or statement to get a false or fraudulent claim paid or approved by the government a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and the appropriate civil monetary penalty.

Pg. 12 – **COMPLAINT**

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

53.     The False Claims Act also imposes liability for knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

54.     The term "knowingly" as used in the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. *Id.* § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

## FACTUAL ALLEGATIONS

55.     As outlined above, an entity was eligible for a first draw PPP loan if it met one of the three criteria to be a small business by: (1) having less than 500 employees; (2) meeting the SBA industry size standard if the entity had more than 500 employees; or (3) having a NAICS Code that begins with 72.

56.     An entity was also eligible for a first draw PPP loan if, as of March 27, 2020, it met the alternative size standard, defined as: (1) the maximum tangible net worth of the business was not more than $15 million; and (2) the average net income after federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application was not more than $5 million.

57.     Entities had to aggregate, consider, and report the total number of employees and revenue for all affiliated domestic and foreign entities to determine small business eligibility for the PPP. Entities that had valid franchise agreements did not have to aggregate, consider, and

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

report the total number of employees and revenue for all affiliated entities on their PPP applications.

58. Entities are considered affiliates if they: (1) have the power to control one another; (2) are controlled by the same third party; or (3) if a principal of an entity controls the management of another.

59. Entities are also considered affiliates if a single individual controls the management or Board of Directors of those entities.

60. Swickard Auto Group and its associated business entities received multiple first draw PPP loans in 2020.

61. All Swickard Auto Group entities, including all dealership locations as well as the management entity Swickard Management Company, are affiliates of one another because Jeff Swickard, the President and CEO of Swickard Auto Group, controls the management of all entities affiliated with Swickard Auto Group.

62. Although eleven entities affiliated with Swickard Auto Group received PPP loans, Relator believes that ten of these entities had valid franchise agreements which would exempt them from the affiliate rules of the PPP.

63. On April 5, 2020, Swickard Management Company received a PPP loan for $699,700 from City National Bank of Florida.

64. For funding Swickard Management Company's PPP loan, City National Bank of Florida received a three percent processing fee from the SBA which totaled $20,991.

65. Swickard Management Company's PPP loan was forgiven on June 11, 2021, in the amount of $707,713.

Pg. 14 – **COMPLAINT**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

66.    Relator understands that Swickard Management Company is a management entity that does not sell cars and does not have a dealership license or a franchise agreement.

67.    Therefore, the employees for *all* affiliated Swickard Auto Group entities must be counted to determine whether Swickard Management Company was eligible to receive a PPP loan.

68.    In April 2020, Swickard Management Company reported that it had 48 employees on its PPP loan application.

69.    In 2020, eleven entities associated with Swickard Auto Group, including Swickard Management Company, received PPP loans. If the employee counts on each of these entities' 2020 PPP loan applications is to be believed, the eleven Swickard Auto Group entities that received PPP loans in 2020 reported a total of 839 employees. This does not consider or include the other Swickard Auto Group entities that did not receive PPP loans.

70.    Because these entities are all affiliates of Swickard Auto Group, Swickard Management Company should have reported over 839 employees on its PPP loan application.

71.    Due to the number of employees of all affiliated entities, Swickard Management Company was ineligible to receive its PPP loan and was therefore ineligible to receive forgiveness of its PPP loan.

72.    Swickard Management Company was also ineligible to receive its PPP loan and to receive forgiveness of its PPP loan because all Swickard Auto Group entities collectively generated over $994 million in revenue in 2020, making Swickard Management Company and its affiliates too large in terms of revenue to be eligible to receive PPP loans.

**COUNT I**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(A)**

Pg. 15 – **COMPLAINT**

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## Knowingly Submitting False Claims for Payment

73.    Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

74.    The False Claims Act imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

75.    Defendants submitted a false claim for payment to the United States government by certifying on SBA Form 2483 that Swickard Management Company had under the requisite number of employees to be eligible for the PPP loan even when the employees of all affiliated entities were counted. In reliance on these statements, City National Bank of Florida submitted claims to the U.S. government which resulted in the government paying City National Bank of Florida processing fees that totaled $20,991.

76.    Had the government known that Swickard Management Company and its affiliated entities had over 500 employees, it would not have issued the PPP loan and granted loan forgiveness.

77.    Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

78.    The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

79.    Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

Pg. 16 – **COMPLAINT**

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

### COUNT II
### Violation of The False Claims Act
### 31 U.S.C. § 3729(a)(1)(B)
### Knowingly Making False Records and Statements Material to a False Claim

80.     Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

81.     The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim submitted to get a false or fraudulent claim paid or approved by the United States government. 31 U.S.C. § 3729(a)(1)(B).

82.     Defendant made false statements that were material to false claims for payment by submitting a PPP loan application to City National Bank of Florida certifying that Defendant was eligible to receive a PPP loan. In reliance on these false statements, City National Bank of Florida submitted claims to the U.S. government which resulted in the government paying City National Bank of Florida processing fees that totaled $20,991.

83.     Had the government known that Swickard Management Company and its affiliated entities had over 500 employees, it would not have issued the PPP loan, granted loan forgiveness, or paid City National Bank of Florida the processing fee associated with the loan.

84.     Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

85.     The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

Pg. 17 – **COMPLAINT**

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

86. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

## COUNT III
### Violation of The False Claims Act
### 31 U.S.C. § 3729(a)(1)(G)
### Knowingly Concealing or Improperly Avoiding or Decreasing an Obligation to Pay or Transmit Money or Property to the Government

87. Relator incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

88. The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

89. Defendant concealed its ineligibility for the PPP loan by submitting an application to the U.S. government which stated that Defendant used all PPP monies in accordance with the rules and regulations and requested forgiveness of the full PPP loan and interest. In submitting these false statements, Defendant sought to reduce or eliminate its obligation to repay the full amount of the dispersed PPP loan with interest.

90. Had the government known that Defendant was ineligible to receive the PPP loan in the first place, it would have required Defendant to repay the dispersed PPP loan with interest.

91. Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

Pg. 18 – **COMPLAINT**

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

92.    The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

93.    Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

## PRAYER FOR RELIEF

Wherefore, Relator Reed, acting on behalf and in the name of the United States of America and on his own behalf, prays that judgment will be entered against Defendant, for violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G) as follows:

a.    This Court enter judgment against Defendant in an amount equal to three (3) times the amount of damages the United States Government has sustained because of the Defendant's actions plus the maximum civil penalties for each act in violation of 31 U.S.C. § 3729;

b.    In favor of Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees, and costs incurred by Relator;

c.    That, in the event the United States Government elects to intervene in and proceed with this action, Relator be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

d.    That, in the event that the United States Government does not proceed with this action, Relator be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

e.    That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States Government elects to pursue;

f.    For all costs of the civil action;

Pg. 19 – **COMPLAINT**

CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97203
Telephone: (503) 477-4899

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

g. That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

h. That the United States and the Relator be awarded prejudgment and post judgment interest;

i. In favor of Relator and the United States for further relief as this Court deems to be just and equitable; and

j. Such other relief as this Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a jury trial.

Dated: November 21, 2024

Respectfully submitted,

s/Ashley A. Marton
Ashley A. Marton, OSB No. 171584
ashley@workplacelawpdx.com
CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, OR 97239
Telephone: (503) 477-4899

R. Scott Oswald (*to be admitted pro hac vice*)
soswald@employmentlawgroup.com
Janel Quinn (*to be admitted pro hac vice*)
jquinn@employmentlawgroup.com
The Employment Law Group, P.C.
1717 K Street, NW, Suite 1110
Washington, DC 20006
Telephone: (202) 261-2813
Facsimile: (202) 261-2835

*Counsel for Qui Tam Relator*

Pg. 20 – **COMPLAINT**